45 F.3d 851
 SEA "B" MINING COMPANY; Clinchfield Coal Company; Amigo
Smokeless Coal Company; Pittston Coal Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 93-1784.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 12, 1994.
Decided Jan. 26, 1995.
 
 ARGUED: Mark Elliott Solomons, Arter & Hadden, Washington, DC, for petitioners. Deborah Elaine Mayer, Office of Sol., U.S. Dept. of Labor, Washington, DC, for respondent. ON BRIEF: William E. Berlin, Arter & Hadden, Washington, DC, for petitioners. Thomas S. Williamson, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Michael J. Denney, Counsel for Enforcement, Office of Sol., U.S. Dept. of Labor, Washington, DC, for respondent.
 Before RUSSELL, WIDENER, and HAMILTON, Circuit Judges.
 Petition denied by published opinion. Judge HAMILTON wrote the opinion, in which Judge RUSSELL and Judge WIDENER joined.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 The issue presented in this consolidated appeal is whether, under the Black Lung Benefits Act (the Black Lung Act or the Act), 30 U.S.C. Secs. 901-960, an Administrative Law Judge (ALJ) and the Benefits Review Board (the Board) have jurisdiction over issues involving the computation of interest assessed against coal mine operators on reimbursements paid to the Black Lung Trust Fund (the Fund) by the coal mine operators for medical benefits paid by the Fund to or on behalf of claimants. The Board dismissed the eight consolidated cases now before us on the ground that it lacked jurisdiction. The petitioners, a number of coal mine operators, petition this court to review the Board's decision. Because we agree with the Board that it lacked jurisdiction over the eight consolidated cases now before us, the petition for review is denied.
 
 
 2
 * At first, it is helpful to describe some relevant statutory provisions. The Act, which has been amended several times, creates "a comprehensive legislative scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis." BethEnergy Mines, Inc. v. Director, OWCP, 32 F.3d 843, 845 (3d Cir.1994). The Act is comprised of two substantive compensation programs: Part B and Part C. Claims filed before July 1, 1973, are governed by Part B. Part B claims are filed with, adjudicated, and paid by the Social Security Administration (SSA). Part B provides monthly cash benefits to an eligible claimant who is awarded benefits, 30 U.S.C. Sec. 924(a), but Part B provides no health care benefits. Id.
 
 
 3
 Part C of the Act is the segment of the program administered by the Department of Labor (the DOL). 30 U.S.C. Secs. 931-945. Part C establishes an employer-funded federal workers' compensation program in cooperation with the states to provide coal mine workers with benefits for total disability or death due to pneumoconiosis. To accommodate the adversarial nature and private funding of Part C claims, Part C incorporates the adjudication and review procedures contained in the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-950, and authorizes the Secretary of Labor "to prescribe ... such additional provisions ... as he deems necessary." 30 U.S.C. Sec. 932(a). The Act grants the district director[1] authority "to hear and determine all questions in respect of [a claimant's] claim," 33 U.S.C. Sec. 919(a), and if an interested party requests a hearing, the district director must order a hearing before an ALJ, who is vested with all the powers of the district director. 33 U.S.C. Sec. 919(c) and (d).
 
 
 4
 The LHWCA provides that the responsible employer or its insurance carrier must pay the costs of medical care needed by the worker as a result of an occupational related injury or disease. See 33 U.S.C. Sec. 907 (Section 7). Section 7 of the LHWCA was not originally incorporated into the Black Lung Act, but it was added in the Black Lung Benefits Act of 1972. Thereafter, a Part C claimant could obtain health care benefits for the treatment of pneumoconiosis. The 1972 amendments did not extend health care benefits to a Part B claimant/beneficiary.
 
 
 5
 When Congress was again considering comprehensive amendments to the Act in the late 1970s, Congress added a new provision allowing Part B claimants/beneficiaries to apply for medical benefits with the DOL under Part C.[2] Claims of this sort are commonly called "medical benefits only" (MBO) claims.[3] All MBO claimants were automatically awarded medical benefits at the time of their filing an MBO claim. 20 C.F.R. Sec. 725.701A(b). These medical benefits are paid by the Fund, which was created in 1977. The Fund, which is financed by excise taxes on mined coal, was created to, among other things, pay benefits to eligible claimants when no responsible coal mine operator is identified. Because medical benefits are paid by the Fund before a determination of coal mine operator liability, the DOL will seek reimbursement from the responsible coal mine operator. Thus, if an MBO claim is chargeable to a coal mine operator, the DOL will pay the costs of medical benefits until such time as the coal mine operator can be notified[4] and given an opportunity to contest or accept liability.
 
 
 6
 Under the DOL procedures, generally, a coal mine operator may accept liability for the treatment of a claimant's pneumoconiosis or litigate it administratively. See 20 C.F.R. Sec. 725.413(a). The district director is then entrusted with the responsibility of determining whether the coal mine operator is liable for the treatment of the claimant's pneumoconiosis. If found liable, the coal mine operator, however, may challenge the district director's decision before an ALJ. See 20 C.F.R. Secs. 725.419, 725.450.[5]
 
 
 7
 The district director is also responsible for resolving disputes concerning: (1) what costs were incurred by the claimant in treating his/her pneumoconiosis; (2) what costs were paid by the Fund; and (3) whether these monies were necessary for the treatment of the claimant's pneumoconiosis. 20 C.F.R. Sec. 725.707(a). The coal mine operator can accept the district director's decision on this score or litigate it before an ALJ. 20 C.F.R. Sec. 725.707(b).
 
 
 8
 Under this practice, when the DOL is awarded reimbursement for amounts paid by the Fund, interest on the amounts to be reimbursed are not awarded. Some time in late 1988, the DOL began asking responsible coal mine operators to pay interest on medical expenditures made by the Fund and reimbursed by the responsible coal mine operator. See 30 U.S.C. Sec. 934(b)(1) (Upon the DOL's determination that a coal mine "operator was required to secure the payment of all or a portion of [the medical] benefits, then the operator is liable to the United States for repayment to the fund of the amount of such benefits ... plus interest thereon."). The regulations identify the date on which the medical bill is paid by the Fund as the accrual date on which interest begins to run. 20 C.F.R. Sec. 725.608(b).
 
 II
 
 9
 The facts of each of the eight consolidated cases before us are almost identical. In each case, a claimant filed a claim for black lung benefits and was awarded benefits under Part B of the Act. Thereafter, each of the claimants filed an MBO claim, for benefits to pay the medical costs incurred in treating his pneumoconiosis. The DOL began paying these medical costs for each of the claimants from the Fund.
 
 
 10
 Thereafter, in each case, the DOL district director to whom each claimant's claim was assigned determined that a particular coal mine operator was liable for these medical costs, and notified that coal mine operator that it was required to reimburse the Fund for the payments the Fund had previously made to the respective claimant. After receiving adequate documentation from the Fund that it had made these payments and that these payments were for pneumoconiosis treatment, each coal mine operator reimbursed the Fund in the amount requested.
 
 
 11
 The DOL district director then demanded that each coal mine operator pay interest on the amount it had reimbursed the Fund; the interest was assessed from the date of the Fund's payment to the claimant until the date the coal mine operator reimbursed the Fund. In each case, however, the coal mine operator took the position that no interest was owed and refused to pay. The DOL then requested a hearing before an ALJ on the issue of the interest owed to the Fund by each coal mine operator.
 
 
 12
 In each of the cases before us, the ALJ found that the coal mine operator owed the interest demanded by the DOL district director and ordered that such interest be paid. The coal mine operator involved in each case appealed to the Board, which consolidated the cases for review. The Board dismissed the cases, concluding that it was without jurisdiction to decide whether the coal mine operators owed interest on payments the coal mine operators made to the Fund for reimbursement of monies paid on behalf of claimants by the Fund. The coal mine operators petition this court to review the Board's decision.
 
 III
 
 13
 Our review of subject matter jurisdiction is plenary. See Tazco, Inc. v. Director, OWCP, 895 F.2d 949, 950-51 (4th Cir.1990). The issue presented here is straightforward: should the issues presented by this consolidated appeal be resolved administratively or by a federal district court. The petitioners contend that the interest issues presented by this appeal should be resolved administratively, that is, by an ALJ; conversely, the respondent contends that the matter before the court should be handled by a federal district court.
 
 
 14
 Recently, the Seventh Circuit in Peabody Coal Co. v. Director, OWCP, 40 F.3d 906, 908 (7th Cir. 1994), correctly noted that "[t]here is no statute explicitly providing for administrative review of the Department of Labor's computation of the interest due under Sec. 934(b), nor is there one explicitly providing for judicial review." However, the circuits that have addressed this issue have held uniformly that such claims should be decided by a federal district court. See id. at 909; BethEnergy Mines, 32 F.3d at 847-51; Youghiogheny and Ohio Coal Co. v. Vahalik, 970 F.2d 161, 163 (6th Cir.1992). We are persuaded by these decisions, and thus, hold that an ALJ and the Board have no jurisdiction over issues involving the computation of interest assessed against coal mine operators on reimbursements paid to the Fund by coal mine operators for medical benefits paid by the Fund.
 
 
 15
 The Act grants the district director authority "to hear and determine all questions in respect of [a claimant's] claim." 33 U.S.C. Sec. 919(a) (emphasis added). If an interested party requests a hearing, the district director must order a hearing before an ALJ, who is to be vested with all the powers of the district director. 33 U.S.C. Sec. 919(c) and (d).[6] The coal mine operators in this case argue that the issue concerning interest raised by this appeal is "in respect of such claim," thereby conferring jurisdiction on an ALJ.
 
 
 16
 We believe the interest assessments at issue in this case do not fall within the statutory rubric of questions "in respect of [a] claim." First, the regulations contain no specific authorization governing either the imposition of these interest assessments by the district director or the challenge of the assessments by the coal mine operators. Thus, the regulations themselves do not delineate specifically that interest determinations present questions "in respect of [a] claim." Second, as the court in BethEnergy Mines noted, interest assessments involve different evaluations from those concerning the claimant's actual claim. BethEnergy Mines, 32 F.3d at 848. As the BethEnergy court noted further, because the coal mine operators concede their underlying liability, "all questions in respect of such claim" have been resolved. Id. at 849.
 
 
 17
 In BethEnergy Mines, the Third Circuit faced the precise question presented to us, namely whether:
 
 
 18
 the Operators' challenge to the interest assessed against them is a "question[ ] in respect of [a] claim" such that it must be referred to an ALJ pursuant to 33 U.S.C. Sec. 919 or whether, as the Department argues, the challenge concerns a collateral attack on a final compensation order, jurisdiction over which rests in the district court pursuant to 30 U.S.C. Sec. 934(b)(4)(A).
 
 
 19
 Id. at 847. After recognizing that all questions "in respect of a claim" trigger the administrative review process, 33 U.S.C. Sec. 919(c) and (d), the BethEnergy Mines court explained that "the claim" referenced in Sec. 919 concerns a claimant's "eligibility for some or all of the compensation sought or granted." Id. That court distinguished challenges to underlying operator liability in MBO cases from interest assessments on money paid by the Fund but later reimbursed by the coal mine operators. The former, the court noted, usually centers on evaluation of the claimant's entitlement to medical benefits disbursed by the Fund; the latter dispute is one exclusively between the coal mine operators and the Fund concerning the time value of money. Id. at 847-48. The interest sought "is not to benefit the claimant, nor is it sought on behalf of the claimant." Id. at 848; see also Vahalik, 970 F.2d at 163. In other words, questions of underlying coal mine operator liability regarding the claim itself have been resolved by the time these interest calculations are made. The BethEnergy Mines court went on, in our view, to conclude correctly that challenges to interest assessments are not questions "in respect of [a] claim," and, thus, the administrative review process is not triggered. BethEnergy Mines, 32 F.3d at 848. The BethEnergy Mines court also found that a proper reading of 33 U.S.C. Sec. 921(d)[7] (one of the incorporated LHWCA provisions) and 30 U.S.C. Sec. 934(b)(2)[8] and (b)(4)(A)[9] of the Black Lung Act conferred jurisdiction on the district court. Id. at 848-49. The court opined that the interaction of these sections stood for the following proposition:
 
 
 20
 "[i]f an operator fails to pay an award of disability benefits for which he is liable, the successful claimant or the Secretary may bring an action in district court to enforce the order. See 33 U.S.C. Sec. 921(d). Moreover, the Secretary may bring an action to enforce a lien against an operator who fails to make payments to the Black Lung Disability Trust Fund. 30 U.S.C. Sec. 934(b)(4)(A)."
 
 
 21
 Id. at 848 (quoting Compensation Dep't of Dist. Five, UMWA v. Marshall, 667 F.2d 336, 339 n. 6 (3d Cir.1981)). Noting that "the amount of the underlying liability for the MBO [claim] has been clearly and finally determined and is not challenged by the Operators," the BethEnergy Mines court concluded that there has been a final determination, conferring jurisdiction on the district court. Id. at 849; see also Vahalik, 970 F.2d at 162 ("Once final eligibility and liability determinations are made, ... the benefits of agency expertise become irrelevant, and jurisdiction is vested in district courts for the enforcement of the agency orders."). The BethEnergy Mines court found that its conclusion was bolstered by the fact that proceeding in district court will provide coal mine operators a full and fair opportunity to litigate their challenges to the interest assessment--that is, coal mine operators may mount a legal challenge to the interest awards or they may merely contest the calculation of interest. BethEnergy Mines, 32 F.3d at 849-50; see also Peabody Coal Co., 40 F.3d at 909. We agree with the reasoning of the Third, Sixth, and Seventh Circuits and hold that an ALJ or the Board does not have jurisdiction over issues involving the computation of interest on medical benefits paid by the Fund. Accordingly, the petition for review will be denied.
 
 
 22
 PETITION DENIED.
 
 
 
 [1]
 The title of deputy commissioner as employed in relevant statutes, see, e.g., 33 U.S.C. Sec. 919 ("a claim for compensation may be filed with the deputy commissioner"), has been renamed district director
 
 
 [2]
 This change in the law was motivated by economics. Since Part C benefits are considered workers' compensation benefits, they offset a claimant's Social Security Disability entitlement. Beginning in 1978, all Part C benefits became employer funded. A shifting of black-lung related health care costs from Medicare to coal mine operators, or the Fund, would, therefore, net a savings to the Medicare Trust Fund
 
 
 [3]
 All of the claims presented in this appeal are MBO claims
 
 
 [4]
 Under the regulations, the district director is charged with the responsibility of identifying the responsible coal mine operator, 20 C.F.R. Sec. 725.412(a), and after the district director identifies the responsible coal mine operator, the district director must furnish to the responsible coal mine operator all documentation, if any, supporting the claimant's claim, 20 C.F.R. Sec. 725.412(b)
 
 
 [5]
 An appeal from the ALJ's determination may be made to the Board, 20 C.F.R. Sec. 725.481, and an appeal of the Board's decision may be perfected with the court of appeals. 20 C.F.R. Sec. 725.482
 
 
 [6]
 This hearing is conducted in accordance with the Administrative Procedure Act, 5 U.S.C. Sec. 554. An interested party has the right to appeal to the Board, 33 U.S.C. Sec. 921(b)(3), and, thereafter petition for review with the court of appeals, 33 U.S.C. Sec. 921(c)
 
 
 [7]
 Section 921(d) provides in part:
 If any employer ... fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for enforcement of the order to the Federal district court for the judicial district in which the injury occurred.
 
 
 [8]
 Section 934(b)(2) provides:
 If any operator liable to the fund under [Sec. 934(b)(1) ] refuses to pay, after demand, the amount of such liability (including interest), then there shall be a lien in favor of the United States for such amount upon all property and rights to property, whether real or personal, belonging to such operator.
 
 
 [9]
 Section 934(b)(4)(A) provides:
 In any case where there has been a refusal or neglect to pay the liability imposed under [Sec. 934(b)(2) ], the Secretary may bring a civil action in a district court of the United States to enforce the lien of the United States under this section with respect to such liability or to subject any property, of whatever nature, of the operator, or in which he has any right, title, or interest, to the payment of such liability.