UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INDIAN MOUNTAIN COAL COMPANY;
OLD REPUBLIC INSURANCE COMPANY,
Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
OWEN BOLLING,
Respondents.

No. 96-2262

On Petition for Review of an Order
of the Benefits Review Board.
(91-1705-BLA)

Submitted: March 31, 1998

Decided: June 11, 1998

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

Mark E. Solomons, Laura Metcoff Klaus, ARTER & HADDEN,
Washington, D.C., for Petitioners. J. Davitt McAteer, Acting Solicitor
of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate
and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate

Solicitor, Mark S. Flynn, Senior Appellate Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The issue presented by this appeal is whether Department of Labor ("DOL") administrative law judges ("ALJ") have jurisdiction to adjudicate actions brought by coal mine operators to recover benefit overpayments to black lung claimants where the Director, Office of Workers' Compensation Programs ("Director"), has no financial interest in the outcome. Indian Mountain Coal Company ("employer") appeals the decision of the Benefits Review Board ("Board") finding that jurisdiction does not lie in such circumstances, arguing that the Board's decision is unsupported by the statutory framework of the Black Lung Benefits Act ("BLA"), 30 U.S.C. § 901 et seq. (1994), and its accompanying regulations, and violates employer's Due Process rights by denying it a remedy where an overpayment occurs. The Director responds, agreeing with employer that the relevant statutory and regulatory provisions do not support the Board's decision, but disagreeing with employer's Due Process argument. We agree with the Director and employer that the applicable regulations are valid and clearly empower ALJ's to resolve actions in which only an employer or insurance carrier seeks recoupment of overpayments. In light of our holding, we need not address employer's Due Process argument.

This action began on July 16, 1979, when Owen Bolling, a former coal miner, filed a claim for black lung benefits under Part C of the BLA. Part C claims are claims filed after December 31, 1973, which are reviewed by the Department of Labor and paid by a responsible

2

operator where one can be found. See 30 U.S.C. §§ 931-945 (1994). A district director resolved Bolling's claim in his favor in August 1980 and named employer as the operator responsible for payment of his benefits. Employer contested entitlement, however, so the DOL commenced interim benefit payments to Bolling from the Black Lung Disability Trust Fund ("Fund") pursuant to its authority under 30 U.S.C. § 934(a)(1) (1994). DOL informed Bolling, however, that he might have to repay these benefits if his claim were ultimately denied.

After an ALJ awarded benefits to Bolling in December 1982, DOL asked the employer's insurance carrier, Old Republic Insurance Company ("carrier") to reimburse the Fund for benefits already paid, totaling $22,857.10, and to begin direct compensation payments to Bolling until employer's appeals were resolved. The employer complied with both requests, but ceased making monthly payments in August 1986 when the Board reversed the ALJ's decision. By this time, employer had paid $24,743.10 directly to Bolling, who had received a total of $47,630.20 in overpayments. This Court affirmed the Board's decision in December 1987.

In June 1989, a district director ordered Bolling to repay all overpayments received directly to the employer. Following a hearing, an ALJ also concluded that Bolling was liable for repayment of the entire amount, but directed Bolling to repay the Fund and the employer separately in the amounts he received from each, respectively. The ALJ rejected Bolling's attempt to establish that he was entitled to a waiver of the overpayment received from the employer, based on a regulation which states that waiver is unavailable where the overpayment is made by a responsible operator. See 20 C.F.R. § 725.547 (1997). The ALJ found that waiver was potentially available for the monies paid directly by the Fund, but found that Bolling failed to qualify for waiver under the applicable regulatory criteria, because he possessed adequate financial resources to repay the overpayment without undue burden to himself. See 20 C.F.R. § 725.542 (1997).

Bolling appealed to the Board, which set aside the ALJ's order based on its finding that the ALJ lacked subject matter jurisdiction. The Board reasoned that because the regulations do not permit waiver of overpayments made by employers, there was no continuing contro-

3

versy between Bolling and the employer. Moreover, because the employer fully reimbursed the Fund for the interim payments it made to Bolling, the Director lacked any economic interest in the case. On reconsideration, the Board reiterated its view that the case provided no justiciable controversy to decide, and further found that circuit cases construing the recoupment provisions of the Longshore and Harbor Workers' Compensation Act ("Longshore Act") 33 U.S.C. § 901 et seq. (1994) lent further support to its original holding. Employer subsequently filed this appeal, in which Bolling elected not to participate.

The statutory authority for actions to recover overpayments is codified at 30 U.S.C. §§ 932(b), 940. Section 923(b) incorporates the overpayment provisions of the Social Security Act, which are found in Section 204(a) of that statute and codified at 42 U.S.C. § 404(a) (1994). Because social security benefits are paid by the Social Security Administration, the language of section 204(a) speaks in terms of overpayments made from United States Treasury Funds rather than overpayments made by employers. Section 923(b) incorporates but does not alter that language. Rather, § 923(b) merely states that the provisions of section 204 "shall be applicable under this part with respect to [eligible benefit recipients] as if benefits under this part were benefits under Title II of [the Social Security Act]." 30 U.S.C. § 923(b).

The words "this part" refer to Part B of the BLA, which governs Part B claims filed by claimants. Any claim filed before January 1, 1974 is a Part B claim, adjudicated and paid by the Social Security Administration. See Sea "B" Mining Co. v. Director, Office of Workers' Compensation Programs, 45 F.3d 851, 852 (4th Cir. 1995). Because black lung benefits in Part B claims were paid by the Social Security Administration, it is not surprising that when Congress incorporated section 204 into Part B of the BLA, it made no reference to employers.

Congress later amended Part C of the BLA, which governed claims filed after December 31, 1973, largely for the purpose of shifting liability for benefits from the Fund to private employers. See Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp., 669 F.2d 187, 189 (4th Cir. 1982). The relevant amendments

4

incorporated the provisions of Part B to Part C"to the extent appropriate." 30 U.S.C. § 940 (1994). Part C also incorporated numerous provisions of the Longshore Act, "except as otherwise provided . . . by regulations of the Secretary." 30 U.S.C. § 932(a) (1994).

The statutory references to "the Secretary" indicate the Secretary of Labor, who administers Part C of the Act and adjudicates Part C claims. Sea "B" Mining Co., 45 F.3d at 852. Pursuant to the discussed authority delegated to it by Congress, the Secretary promulgated regulations which implement the provisions of Section 204(a) of the Social Security Act. Various courts have, at least implicitly by deciding the appeal, recognized that the statutory provisions discussed, and the regulations implemented by the Secretary pursuant to the authority delegated by those provisions, confer jurisdiction on ALJ's to decide overpayment cases wherein the Fund seeks recovery of an overpayment. See Bratcher v. Director, Office of Workers' Compensation Programs, 14 F.3d 157 (7th Cir. 1994); Napier v. Director, Office of Workers' Compensation Programs, 999 F.2d 1032 (6th Cir. 1993); McConnell v. Director, Office of Workers' Compensation Programs, 993 F.2d 1454 (10th Cir. 1993). The parties cite no cases, nor have we located any, which address whether these provisions also authorize ALJ's to exercise jurisdiction over recoupment actions brought by employers.

The Secretary clearly believed that Congress intended the recoupment provisions of Section 204(a) to apply to employers. Title 20, section 725.547 of the Code of Federal Regulations is entitled "Applicability of overpayment and underpayment provisions to operator or carrier." Id. Subsection (a) of that section provides:

> The provisions of this Subpart relating to overpayments and underpayments shall be applicable to overpayments and underpayments made by responsible operators or their insurance carriers, as appropriate. However, if an overpayment has been made by an operator the provisions of §§ 725.541-725.544 shall not be applicable.

20 C.F.R. § 725.547(a) (1997).

Sections 725.541-544 contain the criteria for establishing a claimant's entitlement to receive a waiver of his liability to repay an over-

5

payment. Subsection (c) of § 725.547 authorizes the Office of Workers' Compensation Programs to "take any necessary action," and deputy commissioners to "issue appropriate orders. . . to protect the rights of the parties" in overpayment cases. Id. Finally subsection (d) of that section provides that disputes arising out of such orders "shall be resolved by the procedures set out in Subpart E of this part." 20 C.F.R. § 725.547(d) (1997). Subpart E contains the procedural provisions which govern the conduct of administrative hearings and appeals from administrative decisions. See 20 C.F.R. §§ 725.450-725.483 (1997).

Thus, the Secretary created an administrative scheme for employer actions to recover overpayments which essentially mirrors the scheme applicable to recoupment actions brought by the Director on behalf of the Fund, except that she elected to exclude the claimant's right to seek waiver of the overpayment where such payment comes from an employer. The Board did not discuss these regulations, or their underlying statutory basis, but implicitly found the regulations invalid to the extent that they permit a recoupment action by employers. The Director correctly contends, however, that her view as to whether these regulations are authorized by statute is entitled to judicial deference. See Pauley v. Bethenergy Mines, Inc., 501 U.S. 680, 696-98 (1991). Similarly, we have held that the Director's reasonable interpretation of an ambiguous or silent statutory provision is entitled to judicial deference. See See v. Washington Metropolitan Area Transit Authority, 36 F.3d 375, 383 (4th Cir. 1994).

We agree with the Director and the employer that the relevant statutory scheme can reasonably be interpreted to authorize actions by employers to recover overpayments, regardless of the Director's financial interest in the case. Although the overpayment provisions incorporated from the Social Security Act do not expressly mention employers, Congress applied them to Part C claims, knowing that they would typically be paid by employers. Congress created no exceptions to the statute's overpayment scheme specifically limiting the rights of employers.

Nor do any limitations on the rights of mine operators appear in the Longshore Act. The BLA incorporates many provisions of the Longshore Act, some of which limit a longshore employer's right to

6

recover overpayments from longshore claimants to circumstances where the employer may receive an offset against future compensation. See, e.g., 33 U.S.C. §§ 914(j), 922 (1996).* Incorporation of these provisions, however, does not evince Congressional intent to liken the rights of coal mine operators under the BLA to those of longshore employers under the Longshore Act, and thereby treat operators' recoupment rights differently from those of the Fund in black lung cases. In contrast to the BLA, the Longshore Act does not authorize recovery of overpayments by either employers or the government, suggesting that it is the nature of the claim, rather than the public or private nature of the payor, that Congress thought to be significant. Congress treated black lung and longshore claims differently, expressly applying the overpayment provisions of the Social Security Act to black lung claims but not to longshore claims. The Longshore Act provides no reason for applying its recoupment provisions to operators but not the Fund, and a construction applying them to both would read out of the BLA Congress' express application of the overpayment provisions of the Social Security Act to black lung cases. It would also run afoul of the cited cases recognizing that ALJs possess jurisdiction to administratively adjudicate overpayment claims initiated by the Fund.

One jurisdictional provision of the Longshore Act which the BLA incorporates provides that the Secretary may subject to administrative adjudication "questions in respect of [a] claim." 33 U.S.C. § 919(a) (1996). We agree with the employer and the Director that recoupment actions involving employers are no more or less related to a claim than recoupment actions brought by the Trust Fund, inasmuch as both bear on a claimant's entitlement to retain compensation benefits. Section 919(a) therefore does not limit jurisdiction in this case anymore than it does in any other overpayment case, and it is clear that ALJ's are empowered to decide some overpayment cases.

_____

*These provisions are not part of an overpayment scheme akin to that which exists in black lung cases, but are consistent with various other provisions in the Longshore Act that are aimed primarily at prohibiting double recoveries. See 33 U.S.C. §§ 903, 908(j), 933(f) & (h). See also generally Carter v. Director, Office of Workers' Compensation Programs, 751 F.2d 1398, 1400-02 (D.C. Cir. 1985)(discussing statutory intent to avoid double recoveries through use of offset provisions).

Finally, any analysis of the statutory scheme cannot ignore the broad policy-making authority that the drafters of the BLA delegated to the Secretary. Congress specifically authorized the Secretary to determine the "appropriate" extent to which Part B's overpayment provisions ought to apply to Part C cases, and incorporated portions of the Longshore Act "except as otherwise provided . . . by regulations of the Secretary." 30 U.S.C. § 932(a) (1994). We need not decide whether § 932(a) would permit the Secretary to promulgate a regulation which displaces an incorporated provision of the Longshore Act in the absence of authority that can be found from an examination of the BLA's statutory scheme, as we have found such authority present in this case. That authority, together with the Director's considerable discretion, firmly supports the validity of the regulation at issue in this case.

Accordingly, we find that the Director's view that the relevant statutory provisions authorized the Secretary to promulgate regulations granting employers the right to seek recovery of overpayments is reasonable. As these regulations were properly authorized, the Board erred by invalidating them, and finding no basis for jurisdiction. We also disagree with the Board's apparent view that jurisdiction is lacking on mootness grounds. It is clear that a controversy exists between Bolling and the employer and its carrier in this case. That controversy concerns the issue of liability for a sum of $47,630.20, and the possibility that Bolling lacks a legitimate defense to the employer's claim that he is liable for that sum does not render the case moot. Rather, if Bolling has no defense, the employer is entitled to an order directing Bolling to repay the overpayment.

This result is mandated by the Board's own decision in Justus v. Knox Creek Coal Co., 16 BLR 1-95 (1992), which the Board actually cited as authority for its finding of no jurisdiction. In Justus, after receiving a favorable liability determination, an employer reimbursed the Fund for interim benefits paid by the Fund and sought to recover its overpayment from the claimant. Claimant sought a hearing before an ALJ solely to argue that he was entitled to a waiver of his obligation to repay the overpayment. The ALJ found that because the regulations did not permit waiver where the overpayment came from an employer, there was no need to conduct a hearing. Accordingly, the ALJ granted summary judgment to the employer and entered an order

8

directing the claimant to repay the entire overpayment to the employer.

Justus appealed to the Board, which agreed with the ALJ that there was no justiciable issue and therefore no need to conduct a hearing. The Board, however, did not find that the ALJ lacked jurisdiction to order repayment, but rather affirmed the ALJ's order directing such action. Moreover, the Board found that because the employer had fully reimbursed the Fund for all interim payments, as it was required to do by regulation, the repayment should be made directly to the employer, and the claimant could not seek waiver even for the payments initially paid by the Fund. See Justus, 1992 WL 105817 at *2.

The Board's also cited to its decision in Brown v. Sea "B" Mining Co., 17 BLR 1-115 (1993) (en banc), apparently based on its view that this case undercut the claims of the employer and the Director that this action was in respect of a claim. We reviewed the cited decision in Sea "B" Mining Co. v. Director, Office of Workers' Compensation Programs, 45 F.3d 851 (4th Cir. 1995). We upheld the Board's holding that an ALJ lacked jurisdiction to consider an action by the Fund against a coal mine operator to recoup interest on monies paid by the Fund as interim benefits to a claimant. We adopted the reasoning of other courts that such questions are collateral to an underlying "claim" for benefits because such disputes are exclusively between the fund and the operator and do not involve the claimant's eligibility for some or all of the compensation sought or granted. Id. at 855. As we have stated, however, recoupment actions such as the one at issue are not collateral to the underlying claim because they directly concern the claimant's entitlement to keep all or a portion of the benefits awarded to him.

Finally, we find that the Board improperly relied on decisions from other circuit courts to support its apparent finding that the limitations in the Longshore Act upon an employer's recoupment rights somehow deprive coal mine operators of any recoupment rights. We have explained that those provisions do not apply in black lung cases. Moreover, the decisions cited by the Board simply do not support its position on this point. Rather, these decisions merely found that longshore employers could not bring recoupment actions in federal district court against claimants. See Ceres Gulf v. Cooper, 957 F.2d

9

1199, 1207-08 (5th Cir. 1992); Stevedoring Servs. of Am., Inc. v. Eggert, 953 F.2d 552, 557 (9th Cir. 1992). In this case, the employer and its carrier properly sought to recover the overpayment through the administrative process.

Accordingly, the decision of the Board is reversed, and the case is remanded for further proceedings consistent with this opinion. If on remand it is discovered that there are no contested issues left to be decided, the Board should modify the ALJ's order to require Bolling to pay all benefits directly to the employer. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

REVERSED AND REMANDED WITH INSTRUCTIONS

10