Revised August 29, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60064

_____


TEMPORARY EMPLOYMENT SERVICES; MARYLAND CASUALTY CO

Petitioners

and

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS,
US DEPARTMENT OF LABOR

Respondent

v.

TRINITY MARINE GROUP, INC

Respondent

_____

Petition for Review of a Final Order
of the Benefits Review Board
_____

August 7, 2001

Before KING, Chief Judge, and ALDISERT[*] and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

    Petitioners Temporary Employment Services, Inc. and Maryland

Casualty Company appeal from the final order of the Benefits

_____

    [*]  Circuit Judge of the Court of Appeals for the Third
Circuit, sitting by designation.

Review Board holding them liable for compensation owed to Leroy Ricks under the Longshore and Harbor Workers' Compensation Act and advocate a reversal of the Benefits Review Board's decision on the merits. Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor, urges reversal on the ground that the administrative tribunal lacked jurisdiction to resolve the contractual dispute in this case. Respondent Trinity Marine Group, Inc. requests affirmance of the Benefits Review Board's decision on the merits.

For the following reasons, we GRANT the petition for review, VACATE the Benefits Review Board's decision, and REMAND with instructions to reinstate the original decision of the Administrative Law Judge holding Respondent Trinity Marine Group, Inc. alone liable under the Longshore and Harbor Workers' Compensation Act and to dismiss without prejudice the claims regarding the contractual indemnification provisions for lack of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Temporary Employment Services, Inc. ("TESI") provides temporary employees and payroll services to various businesses, including shipyards. TESI and Respondent Trinity Marine Group, Inc. ("Trinity") entered into a contract in which TESI agreed to provide temporary workers to Trinity. Pursuant to

this agreement, Leroy Ricks, a TESI employee, was assigned to work for Trinity.

While working for Trinity, Ricks was injured at Trinity's shipyard on January 11, 1993. From January 15, 1993 through April 24, 1994, Petitioner Maryland Casualty Company ("Maryland"),[1] TESI's workers' compensation insurance carrier under the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C. §§ 901-950, voluntarily paid Ricks's temporary total disability compensation and medical benefits. Thereafter, Maryland controverted the claim on the basis of a doctor's medical opinion that Ricks could return to work. Ricks then filed a claim for workers' compensation benefits under the LHWCA against TESI and Maryland. Subsequently, at the request of TESI and Maryland, Trinity was added as an additional alleged employer to the action.

A formal hearing was held before an Administrative Law Judge ("ALJ") on January 10, 1996. The ALJ issued a decision on November 26, 1996, awarding Ricks certain benefits; holding Trinity, as Ricks's "borrowing employer," solely responsible for those benefits; and ordering Trinity to reimburse Maryland for benefits that Maryland had previously paid to Ricks.

Trinity appealed the ALJ's decision to the Benefits Review Board (the "Board"), and on December 26, 1997, the Board issued a

---

[1]  TESI, Trinity, and Maryland will be collectively referred to hereinafter as "the parties."

decision remanding the matter to the ALJ and directing him to consider whether a valid contractual obligation between TESI and Trinity obligated TESI, rather than Trinity, to pay the benefits owed to Ricks.  On remand, the ALJ held that TESI had agreed to indemnify Trinity and that Maryland's insurance policy contained a waiver of subrogation in favor of Trinity.  Accordingly, Maryland reimbursed Trinity for the amounts Trinity had paid to Ricks and to Maryland.  TESI and Maryland then appealed the merits of this ALJ decision to the Board.  The Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor (the "Director") challenged the jurisdiction of the administrative tribunal to decide these contractual issues.  Rejecting the Director's jurisdictional challenge, the Board affirmed the merits of the ALJ's decision on June 8, 1999.  Subsequently, the Board denied a motion by TESI and Maryland for reconsideration.

TESI and Maryland timely appealed to this court, urging reversal on the merits.  The Director has also filed in this court urging reversal, but on jurisdictional grounds.[2]

We have jurisdiction over petitions for review of final orders of the Board pursuant to 33 U.S.C. § 921(c).

---

[2]  The Supreme Court has held that the Director may appear as a respondent before the courts of appeals.  See Ingalls Shipbuilding Inc. v. Dir., Office of Workers' Comp. Programs, Dep't of Labor, 519 U.S. 248, 265-266 (1997).

4

## II. STANDARD OF REVIEW

"The Supreme Court has instructed us that the preferred starting point in reviewing an administrative order is to satisfy ourselves that the agency whose order we are asked to review 'had jurisdiction over the matter in dispute.'"  Harmar Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 926 F.2d 302, 307 (3d Cir. 1991) (quoting Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 473 (1947)).  "Jurisdiction is a question of law which we review de novo."  Groome Res. Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 198 (5th Cir. 2000).

"This court reviews the [Board's] interpretation of the LHWCA, an issue of law, de novo, affording no special deference to the [Board's] construction because it is not a policymaking agency."  Equitable Equip. Co. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor, 191 F.3d 630, 631 (5th Cir. 1999); see also Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992) (stating that "the [Board] is not entitled to any special deference"); H.B. Zachry Co. v. Quinones, 206 F.3d 474, 478 (5th Cir. 2000) ("Indeed, deference is owed to the Director's views and not the views of the [Board]."); Ceres Gulf & ESIS/INA v. Cooper, 957 F.2d 1199, 1204 (5th Cir. 1992) (stating that "[s]ubject matter jurisdiction is a question of law[, and] our review is plenary").

### III. JURISDICTION

Due to the maritime character of their employment, longshore workers[3] were precluded from participating in state workers' compensation schemes.  See S. REP. NO. 973, at 16 (1926); 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7-1, at 380 (3d ed. 2001). Therefore, in order to protect longshore workers, Congress enacted a federal no-fault workers' compensation system — the LHWCA.  See 33 U.S.C. § 904; 1 SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7-1, at 380-81 ("In return for compelling the employer to pay compensation without proof of negligence, [the LHWCA] provides a statutory scheme of benefits which are substantially less than tort damages, and grants the employer immunity from tort liability, regardless of how serious its fault may have been.").

"A fundamental aspect of [this system] is the expectation that employers will pay compensation promptly and directly, without the necessity of a formal award."  1 SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7-1, at 381.  However, when a worker's benefits are controverted, a claim for compensation may be filed and heard before an ALJ, see 33 U.S.C. § 919, and appealed to the Board, see id. § 921.

---

[3]   The class of land-based workers who perform a variety of tasks for, on, and around vessels were commonly known as "longshoremen."  See 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7-1, at 380 (3d ed. 2001).  The term "longshore" was substituted for "longshoremen" in the 1984 amendments.  See Pub. L. No. 98-426, 98 Stat. 1639, 1654 (1984).

Under the LHWCA, an ALJ has jurisdiction over a "claim for compensation" and has "full power and authority to hear and determine all questions in respect of such claim."  Id. § 919(a)[4] (emphasis added); see also id. § 919(d) (vesting the powers, duties, and responsibilities of the deputy commissioners with respect to hearings in the ALJ).[5]  The threshold issue we must decide is whether the parties' claims regarding their indemnification contractual provisions are "questions in respect of" an LHWCA compensation claim and thus questions over which the ALJ has jurisdiction.  As we explain below, we find the

_____

[4]  Section 919(a), "Filing of claim," reads in full:

Subject to the provisions of section 913 of this title a claim for compensation may be filed with the deputy commissioner in accordance with regulations prescribed by the Secretary at any time after the first seven days of disability following any injury, or at any time after death, and the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim.

33 U.S.C. § 919(a).

[5]  Section 919(d), "Provisions governing conduct of hearing; administrative law judges," reads in full:

Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of Title 5.  Any such hearing shall be conducted by a [sic] administrative law judge qualified under section 3105 of that title.  All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in administrative law judges.

33 U.S.C. § 919(d) (footnote omitted).

7

contractual issues in this case are beyond the scope of the authority granted to the LHWCA administrative tribunals.

## A. The Question Presented

Before addressing the jurisdictional question, we make clear precisely what the parties are asking us to decide in this case. A body of law has developed under the LHWCA in response to situations in which multiple employers and carriers possibly played a role in the worker's employment. The "borrowed employee" doctrine deals with one such situation. This doctrine is applicable in cases where one employer "loans" or "lends" employees to another employer.

The instant case required application of this doctrine because, as described supra in Part I, TESI "loaned" Ricks to Trinity. We have determined that the "borrowing employer" is the employer for purposes of the LHWCA and, as such, is responsible for the payment of the worker's compensation benefits. See Total Marine Services, Inc. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor, 87 F.3d 774, 779 (5th Cir. 1996). Therefore, Trinity, as the borrowing employer, is solely liable for Ricks's benefits.

This determination was made in the initial ALJ decision and affirmed by the Board. It is not being contested in this appeal. What is at issue here is Trinity's contention that a contract exists between itself and TESI pursuant to which TESI has agreed to indemnify it from any claims arising from Ricks's employment

8

(i.e., the worker's compensation benefits) and that Maryland's insurance policy contains a waiver of subrogation in favor of Trinity. In essence, Trinity is claiming that, although the LHWCA places liability on its shoulders, it has contracted around that rule via the Maryland-TESI/Trinity agreement. Trinity's claims are dependent, therefore, upon contractual provisions that are not governed by the LHWCA. These issues are the ones addressed by the ALJ on remand, an action that the Board affirmed.

### B. Scope of Authority of LHWCA Adjudicative Administrative Tribunals in this Case

#### 1. Jurisdictional Arguments

The Board held that the ALJ "acted within his authority in resolving the issue of whether Maryland is liable for [Ricks's] disability compensation, based on his interpretation of the relevant contracts." Ricks v. Temp. Employment Servs., Inc., [1999] 33 Ben. Rev. Bd. Serv. (MB) 81, 84, available at 1999 WL 648934, at *3. To support its holding, the Board referenced Pilipovich v. CPS Staff Leasing, Inc., [1997] 31 Ben. Rev. Bd. Serv. (MB) 169, 171-72, available at 1997 WL 764428, in which it had held that an ALJ should resolve contractual indemnity and insurance issues between the lending employer, its insurer, and the borrowing employer. The Board also relied on this court's holding in Total Marine, in which we stated: "[W]e conclude that

a borrowing employer is required to pay the compensation benefits of its borrowed employee, and, <u>in the absence of a valid and enforceable indemnification agreement</u>, the borrowing employer is required to reimburse an injured worker's formal employer for any compensation benefits it has paid to the injured worker." 87 F.3d at 779 (emphasis added). The Board stated further that it was not in the interest of judicial economy to defer consideration of the contractual issues "to another place and time." <u>Ricks</u>, [1999] 33 Ben. Rev. Bd. Serv. (MB) at 83, <u>available at</u> 1999 WL 648934, at *3.

Objecting to the Board's determination, the Director argues that the LHWCA does not give ALJs the authority to determine common law contractual rights and liabilities. He asserts that an ALJ can decide only whether a valid compensation claim exists and, if so, the amount of that claim and which insurer is responsible for making that payment under the LHWCA. In essence, the Director maintains that, by its terms, § 919(a) only grants authority to ALJs to determine issues under LHWCA law as they relate to compensation claims. The Director argues that questions relating to who may be liable under non-LHWCA law is beyond the purview of LHWCA adjudicative administrative tribunals. In this regard, the Director points out that reading § 919(a) to grant expansive adjudicative powers to LHWCA administrative tribunals could violate Article III. The Director also states that the principles guiding our decision in <u>Equitable</u>

10

Equipment Co. v. Director, Office of Worker's Compensation Programs, U.S. Department of Labor, 191 F.3d 630, 632 (5th Cir. 1999), in which we held that an ALJ lacked jurisdiction to adjudicate an employer's claim against its insurers for attorneys' fees, command a finding that no jurisdiction exists in this case.  As for the Board's reliance on its decision in Pilipovich[6] and Total Marine, the Director contends that Pilipovich was wrongly decided and that the Total Marine language on which the Board relied is dictum (i.e., that the panel in the case was merely reserving a question not presented on the facts before it).

In addition, the Director points out that placing non-LHWCA contractual issues within the ambit of the ALJ's authority will result in an erosion of the objectives of the LHWCA.  He states that the critical, central theme of the LHWCA is to get benefits (to which the claimant is entitled) to the claimant promptly. This objective would be frustrated when ALJs attempt to decide common law contract issues, questions that are beyond their expertise, and when the claimant must rely on non-LHWCA-approved entities, which are not set up to make such payments, to produce those disbursements.  Thus, the Director argues that finding that ALJs do not have authority to interpret non-LHWCA indemnity

---

[6]  The Director notes that the Pilipovich decision was also appealed on jurisdictional grounds, but the case settled on the eve of oral argument before this court.

agreements supports the public policy justification of the ready determinability of who it is that owes LHWCA benefits.

The parties all disagree with the Director that the ALJ did not have authority to consider the contractual indemnification dispute in this case.[7] TESI and Maryland conclusorily state that the ALJ does have authority to decide their contract issues and that it would be inefficient to have to litigate these issues in another forum. The public policy considerations of avoiding multiplicity of litigation and efficacy underpin TESI's and Maryland's arguments.

Trinity argues that the import of Total Marine is that it is proper for ALJs to consider whether a valid and enforceable indemnification agreement exists between the employers. Trinity notes that, as in this case, an allocation question (i.e., which of two employers is responsible for the compensation benefits) was at issue in Total Marine. Trinity also states that consideration of the indemnification dispute conforms to § 919(a)'s requirement that the issues are "in respect of" a compensation claim because the ALJ would be determining who pays the claimant's benefits. Finally, Trinity objects to the

_____

[7] Although the Director thoroughly briefed his jurisdictional challenge, the parties did not respond to the issue in their initial briefing to this court. During oral argument, when pressed by the panel, the parties put forth the arguments described infra in the text, and Trinity included some of these arguments in its response to the Director's supplemental brief (filed after oral argument).

12

Director's reliance on Equitable Equipment Co., stating that, while attorneys' fees are clearly ancillary to the compensation determination, the responsible payer inquiry is not.

### 2. Analysis of Jurisdiction in this Case

We begin, of course, with the text of § 919(a).  See Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985) ("It is axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.'" (alteration in original) (citation omitted)).  The relevant language states that an ALJ has authority "to hear and determine all questions in respect of such claim" and the phrase "such claim" references "a claim for compensation."  33 U.S.C. § 919(a).  Thus, a plain reading of the text indicates that the ALJ's authority extends only to questions that are in respect of the LHWCA claim of an injured or deceased worker.

The Supreme Court has not looked beyond the text of § 919(a) to discern its meaning.  In Cardillo v. Liberty Mutual Insurance Co., the Court stated simply that "questions as to whether an injury arose out of and in the course of employment necessarily fall within the scope of [the administrative tribunal's] authority."  330 U.S. 469, 477 (1947); see also Crowell v. Benson, 285 U.S. 22, 62 (1932) (finding that the LHWCA withstood various constitutional challenges and stating that the "such claim" language in § 919(a) meant "the claim for compensation

13

under the [LHWCA] and by its explicit provisions is that of an 'employee,' as defined in the [LHWCA], against his 'employer'"). This court has, however, provided some guidelines regarding the jurisdictional reach of § 919(a).

In interpreting § 919(a), we have explained that the disputed issue must be "integral to deciding the compensation claim." Equitable Equip. Co., 191 F.3d at 632, 633 (stating that § 919(a) "does not vest jurisdiction in ALJs to decide a contract dispute between an employer and its carriers when the cause of action is wholly unrelated to an underlying claim for compensation"). We held, therefore, that "a state law breach of contract claim between an insurer and its insured . . . . is beyond the jurisdictional reach of § 919(a), particularly when the underlying compensation claim has been resolved and no factual dispute regarding the compensation claim itself must be decided." Id. at 632; see also RESTATEMENT (SECOND) OF JUDGMENTS § 83 cmt. g (1982) (stating that an administrative tribunal "ordinarily lacks authority to adjudicate claims arising out of the transaction in question but based upon other substantive legal premises").

Equitable Equipment Co. essentially echoed the approach to § 919(a) taken by other courts. For instance, in BethEnergy Mines, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor, the Court of Appeals for the Third Circuit held that administrative bodies under the Black

14

Lung Benefits Act (which incorporates by reference the claim management and adjudication procedures of the LHWCA, such as § 919(a)) lacked jurisdiction to resolve disputes regarding interest assessed against employers on reimbursements to the black lung disability trust fund for medical benefits that the fund had previously paid into on behalf of the claimants. See 32 F.3d 843, 845-48 (3d Cir. 1994). Agreeing with the Director's construction of § 919(a) in the case, the court stated that "[b]ecause the 'claim' to which [the LHWCA] sections refer is that of the injured or deceased [worker], the administrative procedure . . . is available only to a party . . . who seeks to challenge some aspect of the [worker's] 'claim,' such as the [worker's] eligibility for some or all of the compensation sought or granted." Id. at 847. The court contrasted "underlying liability determinations" (i.e., "[p]roceedings before the ALJ and the Board . . . [which] center on the evaluation of the claimant's entitlement to payments"), id. at 847-48 (emphasis added), and interest assessments, which do not benefit the claimant and are not sought on behalf of the claimant. See id. Thus, the court concluded that "although the demand for interest is predicated in the first instance on the fact that the [worker] filed the claim, it cannot be said to raise any 'questions in respect of such claim,' all of which have been resolved by then." Id. at 848.

15

Also regarding interest assessments in Black Lung Benefits Act cases, the Court of Appeals for the Fourth Circuit held that such disputes were not within the cognizance of the ALJ and the Board. See Sea "B" Mining Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 45 F.3d 851, 854-56 (4th Cir. 1995). Relying on BethEnergy, the court noted that because "underlying liability" was not at issue, "'all questions in respect of such claim' have been resolved." Id. at 855; see also Indian Mountain Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, No. 96-2262, 1998 WL 382630, at *5 (4th Cir. June 11, 1998) (reaffirming Sea "B" Mining and stating that questions "collateral to" an underlying claim for benefits are those that do not involve the claimant's eligibility for some or all of the compensation sought or granted). Other circuits have also similarly resolved the extent of administrative adjudicatory authority under § 919(a) in this regard. See, e.g., Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 40 F.3d 906, 908-09 (7th Cir. 1994) (stating that "all questions in respect of such claim" had been resolved because underlying liability was not at issue); B & S Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 35 F.3d 1041, 1045-46 (6th Cir. 1994).

Thus, while no court has apparently considered the precise question facing us today (i.e., whether issues involving contractual indemnification provisions are "questions in respect

16

of" a worker's compensation claim), courts have repeatedly rejected attempts to read the "in respect of" language expansively; rather, courts have focused on the fact that the disputed issue must be essential to resolving the rights and liabilities of the claimant, the employer, and the insurer regarding the compensation claim under the relevant statutory law.[8]  As in cases involving the Black Lung Benefits Act (which incorporates, inter alia, § 919(a)) and other analogous circumstances, we are presented today with a dispute that does not involve the claimant's entitlement to benefits or the

---

[8]  Although Board decisions regarding questions of law are entitled to no deference, see supra Part II, we briefly discuss some relevant decisions only to demonstrate that Trinity and the Board's reliance on those decisions is flawed.  In Rodman v. Bethlehem Steel Corp., the Board held that an ALJ had jurisdiction "to merely adjudicate those limited insurance contract disputes which arise out of or under the [LHWCA], the resolution of which are necessary in order to determine compensation liability in claims under the [LHWCA]."  [1984] 16 Ben. Rev. Bd. Serv. (MB) 123, 126 (emphasis added).  In addition, the Board has acknowledged that an ALJ has jurisdiction to resolve issues regarding insurance contract coverage when determining the responsible employer or carrier under the LHWCA. See Barnes v. Ala. Dry Dock & Shipbuilding Corp., [1993] 27 Ben. Rev. Bd. Serv. (MB) 188, 191, available at 1993 WL 404281, at *3 (stating that the ALJ "has the power to hear and resolve insurance issues which are necessary to the resolution of a claim under the [LHWCA]" (emphasis added)).
We need not and do not address these decisions.  They are inapposite to this case.  No party here contends that the resolution of those contractual questions that were addressed by the decisions of the ALJ and the Board after remand is required to determine compensation liability under the LHWCA in the first instance, a determination that was made in the initial decision of the ALJ.

question who, under the LHWCA, is responsible for paying those benefits.

Our Total Marine case is not to the contrary because it does not stand for the proposition that any contractual indemnification issues may be adjudicated by the administrative tribunal. To restate, we held in Total Marine: "[W]e conclude that a borrowing employer is required to pay the compensation benefits of its borrowed employee, and, in the absence of a valid and enforceable indemnification agreement, the borrowing employer is required to reimburse an injured worker's formal employer for any compensation benefits it has paid to the injured worker." 87 F.3d at 779. Thus, we held that, in the borrowed-employee context, the borrowing employer is the entity responsible for the payment of the claimant's benefits. This holding was the result of an analysis regarding how the LHWCA determines the responsible employer in borrowed employee situations. As such, the administrative tribunal properly adjudicated questions arising under the LHWCA that bore directly on the compensation claim. Furthermore, the language in Total Marine regarding "the absence of a valid and enforceable indemnification agreement" was not dispositive of the issues presented in that case because no such agreement even existed. We agree with the Director that Total Marine merely reserved a question not presented, a question we resolve today.

18

Interpreting § 919(a) authority as not extending to the contractual issues in this case is faithful not only to the language of the statutory provision and the cases interpreting that language, but also to the objectives and policy considerations underlying the LHWCA.  As mentioned briefly at the outset of this section, the LHWCA is a no-fault compensation scheme, in return for which employers are immune from tort liability.  The basic structure of the LHWCA provides that the employer and its insurance carrier are responsible for the claimant's compensation benefits.  The insurance relationship under the LHWCA is closely regulated for the security, prompt provision, and convenient supervision of payments of benefits to the worker.  See 33 U.S.C. §§ 932, 935-936; see also, e.g., id. § 914(a), (b) (stating payments must be paid promptly, periodically, and directly to the claimant).  See generally 20 C.F.R. pt. 703 (2001).  The carrier of record for the entity ultimately determined to be the responsible employer under the LHWCA must bear the liability for the compensation of the claimant.  See id. § 932(a)(1); 20 C.F.R. §§ 703.003, .115 (2001); see also 33 U.S.C. § 932(a)(2) (stating the requirements for an employer to be authorized as a self-insurer and thus its own carrier and the attending obligations); 20 C.F.R. §§ 703.002, .301-.312 (2001) (same).  The convenient and effective administration of the LHWCA intended to be provided by the LHWCA's terms and implementing regulations depends in significant

19

measure on the prompt, accurate identification of the liable employer and its carrier to whom the compensation system is entitled to look for the prompt and continuing payment of all benefits. See Rodriguez v. Compass Shipping Co., Ltd., 451 U.S. 596, 612 (1981) (stating that "the general policy of the [LHWCA is] to encourage the prompt and efficient administration of compensation claims").

Once all the LHWCA issues in respect of the compensation claim have been adjudicated (as they have been in this case), an adjudication of who else may be liable on other grounds is, therefore, unnecessary to the objective of the LHWCA proceedings. Moreover, such resolution is potentially destructive to the security of future payments, which has been accomplished by identifying and ordering payments from an LHWCA-authorized carrier. This is because a party deemed to be ultimately responsible on contractual or other grounds may have far less financial stability and long-term reliability than is required of LHWCA carriers.

Not only could security and prompt administration of the LHWCA be impaired if ALJs resolve questions such as the contractual agreement at issue in this case, but ALJs would be acting beyond their expertise, thus further hindering the mission of the LHWCA. As the Supreme Court stated: "[T]he obvious purpose of the [LHWCA is] to furnish a prompt, continuous, expert and inexpensive method for dealing with a class of questions of

20

fact which are <u>peculiarly suited</u> to examination and determination by an administrative agency specially assigned to that task." <u>See</u> <u>Crowell</u>, 285 U.S. at 46 (emphasis added). The "judicial economy" rationale on which the parties and the Board heavily rely in their argument to permit the ALJ to make the contractual indemnification determinations in this case is unpersuasive: "It cannot be regarded as an impairment of the intended efficiency of an administrative agency that it is confined to its proper sphere[.]" <u>Id.</u> at 65. Therefore, the policy considerations underlying the LHWCA provide further support for the determination that Congress did not grant administrative tribunals authority in § 919(a) to adjudicate the contractual issues in this case because such a grant would undermine the very goals it was attempting to achieve in creating and structuring the LHWCA as it did.

Because we conclude that administrative tribunals under the LHWCA have not been granted adjudicatory authority by Congress to resolve the parties' claims, we need not reach the question whether such an adjudication would violate Article III of the Constitution under <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), and its progeny. We note, however, that common law contract disputes generally "involve 'private rights' which are at the 'core' of 'matters normally reserved to Article III courts [and thus beyond the purview of non-Article III entities].'" <u>Coit Indep. Joint Venture v. Fed.</u>

21

Sav. & Loan Ins. Corp., 489 U.S. 561, 578-79 (1989) (quoting Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 853 (1986)). In this regard, "statutes can and should be read to avoid [serious constitutional] difficulties." Id. at 579 (citing Schor, 478 U.S. at 841, and Crowell, 285 U.S. at 62); see also Equitable Equip. Co., 191 F.3d at 632 ("Underpinning . . . cases is a concern . . . that the jurisdiction of a non-article III tribunal like those under the LHWCA workers compensation statute should be consistent with . . . [Northern Pipeline].").

We reaffirm, therefore, the principles put forth in our Equitable Equipment Co. case and determine that those principles dictate that the ALJ and Board overstepped their statutory authority in this case by deciding questions that are not "integral to" the compensation claim, see Equitable Equip. Co., 191 F.3d at 633. In essence, whether TESI agreed to indemnify Trinity for workers' compensation claims relates to the compensation claim only in the sense that the question would not arise but for Ricks's compensation claim. This "but for" approach to § 919(a) casts too wide a net, and for the reasons discussed above, we decline to rest administrative jurisdiction "on too thin a reed," id. at 632. As such, we are not presented with a "question in respect of a claim" within the meaning of § 919(a) because all questions regarding Ricks's LHWCA compensation claim have already been resolved. See, e.g., BethEnergy, 32 F.3d at 847-48. Consequently, the ALJ and the

22

Board lacked authority to adjudicate the Maryland-TESI/Trinity contractual dispute in this case.

Because we find the Director's jurisdictional challenge to the actions of the ALJ and the Board to be meritorious, we need not and do not address the merits of this case. Therefore, the parties' claims are to be dismissed without prejudice and may be filed in a court of general jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, we GRANT the petition for review, VACATE the Board's decision, and REMAND with instructions to reinstate the original decision of the ALJ holding Trinity alone liable, as employer and self-insurer, under the LHWCA and ordering Trinity to reimburse Maryland for compensation paid to Ricks and to dismiss without prejudice the claims regarding the contractual indemnification provisions for lack of jurisdiction. Each party shall bear its own costs.